**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Lee FAIR, Defendant–Appellant.**

No. 00–5302.

United States Court of Appeals,
Sixth Circuit.

April 20, 2001.

Before KENNEDY and
SUHRHEINRICH, Circuit Judges;
McKEAGUE, District Judge.*

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

PER CURIAM.

This is an appeal from a conviction and sentence imposed by the United States District Court for the Eastern District of Tennessee. Following a bench trial defendant-appellant Jerry Lee Fair was convicted of all four charged offenses: count 1—being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1); count 2—being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1); count 3—receiving distilled spirits knowing or having reason to believe that taxes due had not been paid or determined as required by law, 26 U.S .C. § 5601(a)(11); and count 4—possession of distilled spirits for which the immediate containers did not bear the proper closures, 26 U.S.C. § 5604(a)(1). On appeal, defendant challenges the sufficiency of the evidence to support the convictions, objects to an evidentiary ruling, and objects to enhancement of his sentence for obstruction of justice. Concluding the record does not support a finding that the district court committed clear error or abused its discretion, we affirm the judgment of the district court.

## I

In June 1997, defendant Jerry Lee Fair and Charlotte Barnett, with whom Fair had been involved in a relationship for some 13 years, jointly operated a boarding house in Johnson City, Tennessee. Barnett often stayed with Fair at the boarding house, but she also resided in a mobile home in Johnson City, approximately four miles from the boarding house. On June 3, 1997, at about 5:00 a.m., Fair was awakened by law enforcement officers and consented to a search of the boarding house. While searching the bedroom where defendant Fair and Barnett slept, officers found: Federal .22 caliber ammunition and Remington–Peters brand .380 and .32 caliber ammunition in a cup on a chest of drawers;

a box of Federal .22 caliber ammunition containing 287 hollow-point rounds (as well as 2 rounds of Remington .22 caliber ammunition) on the same chest of drawers; a loaded .22 caliber revolver hidden between the mattress and box springs of the bed, loaded with seven Federal .22 hollow-point rounds; 12–gauge shotgun shells in the dresser; $3,288 in cash in a man's boot near the bed; and four half-gallons of a distilled whiskey-type alcoholic beverage.

On August 24, 1999, the grand jury returned a four-count superseding indictment charging Fair as described above. Defendant waived his right to a jury trial. The bench trial was conducted on September 21, 1999. On September 30, 1999, the district court issued a 14–page written opinion finding defendant guilty of all four counts as charged and on March 9, 2000, defendant was sentenced to a 33–month term of imprisonment on each of the four counts, to run concurrently. This sentence included a two-level enhancement for obstruction of justice based on the court's finding that defendant had perjured himself during trial.

## II

### A. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to support convictions under counts 1, 2 and 3 of the superseding indictment. The trial court's judgment of conviction must be supported by substantial and competent evidence on the whole record. *United States v. Turner*, 995 F.2d 1357, 1362 (6th Cir.1993). When reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, the court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Unit-*

ed States v. Layne, 192 F.3d 556, 567 (6th Cir.1999). All reasonable references must be resolved in favor of the government. *Id.* Circumstantial evidence alone may be sufficient to sustain a conviction. *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir.1999). The evidence may be sufficient even though it fails to remove every reasonable hypothesis except that of guilt. *Id.*

*(1) Firearm and Ammunition Possession*

■ With respect to the offenses charged in counts 1 and 2, the elements are: (1) that the defendant had a previous felony conviction; (2) that the defendant possessed a firearm or ammunition; and (3) that the firearm or ammunition had traveled in or affected interstate commerce. *Layne*, 192 F.3d at 572; *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998). There is no dispute as to the first and third elements, as defendant stipulated that he had a previous felony conviction and that the firearm and ammunition found in his bedroom had traveled in interstate commerce. Defendant contends, however, that the government did not prove he possessed either the revolver or the ammunition.

Both defendant and Charlotte Barnett testified that the ammunition had been collected from or left by residents of the boarding house, many of whom were veterans. Residents were not allowed to have weapons. Barnett often found ammunition while cleaning the rooms and would bring it to the room she shared with defendant Fair. Defendant testified that he often gave ammunition found at the boarding house to a friend who hunts.

The district court found this evidence sufficient to establish that defendant, by allowing the ammunition to be collected in his bedroom, did exercise dominion and control over it. Though he may have jointly possessed it with Charlotte Barnett, the district court found defendant's possession sufficient to satisfy the possession element of the charged offense.

Defendant contends that although he "may have exercised some minimal control over the ammunition in a very passive way, there is no testimony that he actually did anything inappropriate or committed any other criminal acts with the ammunition." He argues he did not "criminally possess" the ammunition.

Evidence of constructive possession suffices to satisfy the possession element. *Kincaide*, 145 F.3d at 782. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.*, quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973). Further, proof that "the person has dominion over the premises where the firearm is located" is sufficient to establish constructive possession. *Kincaide*, 145 F.3d at 782, quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir.1993). Possession need not be exclusive, but may be joint. *Craven*, 478 F.2d at 1333.

Applying these standards to the trial testimony yields but one conclusion. The ammunition was undisputedly found in defendant's bedroom, premises over which he clearly had dominion. Defendant's own testimony concerning his receipt of such ammunition and his custom of giving it to a friend supports the finding that he knowingly had the power and intention of exercising dominion and control over the ammunition. Viewing the evidence in the light most favorable to the prosecution, the evidence clearly supports the finding that defendant constructively possessed the ammunition. That the government failed to prove defendant possessed the ammuni-

tion with evil intent is of no consequence. The elements of the charged offense were proved by substantial and competent evidence.

Defendant also challenges the evidentiary support for the finding that he possessed the revolver found under his mattress. Greg Rumley, a disabled veteran and resident of the boarding house, testified that he had surrendered the revolver to Charlotte Barnett when he moved in. He testified that when he gave the gun to Barnett, it was not loaded. Barnett corroborated Rumley's testimony. She further testified that she told defendant Fair about the gun; that he advised her to take it away because he was a convicted felon; that she intended to take it to her mobile home; and that she placed it under the mattress and then forgot about it. The gun was found just where she had left it approximately one year earlier. When asked if she had ever loaded the gun, she answered, "I don't know a thing about the gun. I just had it in my hands long enough to put it under the mattress. I don't know if it was loaded or unloaded." Defendant testified that when he learned about Rumley's gun, he directed Barnett to "take it to the trailer, take it somewhere." He thought she had done so and disclaimed any knowledge of the gun from that time forward until it was found under the mattress.

The trial court evaluated this evidence as follows:

The Court does not find Mr. Fair's testimony to be credible. It is undisputed that when the firearm was found under the mattress of the bed that it was loaded. However, the last time that Greg Rumley saw his firearm, it was unloaded, and Ms. Burnett [sic] admitted that she did not know how to load the gun. The Court finds that the defendant's explanation for the presence of the .22 caliber ammunition in the room coupled with the presence of a loaded .22 caliber firearm is not believable. The Court finds that from all the proof in regard to the firearm, that the defendant was the individual who loaded this weapon because Mr. Rumley gave the unloaded weapon to Ms. Burnett in the defendant's presence, and Ms. Burnett did not know how to load the gun.

The Court finds that Jerry Fair had possession of the firearm and ammunition, because the Court finds beyond a reasonable doubt, that he knowingly had constructive possession of the firearm and ammunition or jointly with others who were in the boarding house at the Sidney Street location. Therefore, the Court finds that the defendant is guilty of the offenses charged in Counts 1 and 2.

Defendant now contends the trial court's finding is directly contrary to the evidence. He argues the finding that his testimony was not credible is based exclusively on the deduction that he must have exercised dominion over the revolver to load it, because (a) the revolver was not loaded when surrendered to Barnett; (b) it was loaded when found on June 3, 1997 under his mattress; and (c) Barnett did not load it and did not know anything about it. Defendant argues it is just as plausible that Rumley was mistaken in testifying the firearm was not loaded when he turned it over to Barnett.

The prosecution's direct evidence against defendant on this point is not particularly strong. Yet, circumstantial evidence alone may be sufficient to sustain the conviction. *Warwick,* 167 F.3d at 971. And the evidence need not remove every reasonable hypothesis other than the defendant's guilt. *Id.* On review, the government is entitled to the benefit of all reasonable inferences. *Layne,* 192 F.3d at

567. Moreover, in evaluating the sufficiency of the evidence, the reviewing court is not to weigh the evidence or consider the credibility of witnesses. *United States v. Welch,* 97 F.3d 142, 149 (6th Cir.1996); *United States v. Spears,* 49 F.3d 1136, 1140 (6th Cir.1995). Issues of witness credibility are within the exclusive province of the finder of fact. *United States v. Latouf,* 132 F.3d 320, 330 (6th Cir.1997); *Spears,* 49 F.3d at 1140.

According to the testimony, accepted at face value, an unloaded handgun, which defendant had told his longtime friend to remove from the boarding house, and which was then, unbeknownst to him, placed under his mattress in his bedroom and forgotten, was found there over a year later loaded with the same sort of ammunition that was also found in plain view on the neighboring dresser. Under all the circumstances, viewed in the light most favorable to the government, it is apparent that the trial court, which heard the testimony from the witness stand and had the opportunity to evaluate witnesses' credibility, was entitled to conclude that defendant testified falsely when he disclaimed knowledge of the revolver's presence and that defendant did at least constructively possess it. For the reasons stated by the trial court, we find the evidence sufficient to sustain the conviction.

*(2) Possession of Untaxed Distilled Spirits*

■ With respect to count 3, defendant contends the government's proofs were insufficient to support the determination that he received distilled spirits with knowledge or reason to believe that appropriate taxes had not been paid or determined as required by law. The elements that must be proved under 26 U.S.C. § 5601(a)(11) are: (1) that defendant had received distilled spirits; (2) that the taxes

due on such spirits had not been paid or determined as required by law; and (3) that defendant knew or had reason to believe that the taxes had not been paid or determined as required by law.

Defendant stipulated that the containers found next to his bed contained distilled spirits. He testified that a friend had given him the moonshine and he thought it was lawful to possess as much as three gallons of moonshine. Special Agent Russell Alford testified that the spirits were found next to defendant's bed in four half-gallon mason jars. Alford testified that the mason jars were covered with normal canning screw-top lids and did not have the customary safety sealed closures with tax scripts or bar code labels evidencing that the state taxes had been determined and paid.

Viewed in the light most favorable to the prosecution, this evidence was sufficient to warrant a finding that defendant had reason to believe that required taxes had not been paid or determined.

B.   Admission of 1982 Statement

During the course of the government's cross-examination of defendant, the Assistant United States Attorney inquired about and was ultimately allowed to introduce a written statement given by defendant to law enforcement officers in 1982. The statement recounted an event that occurred in March 1982 when defendant took a .32 caliber pistol from an intoxicated person who had entered defendant's place of business. According to the written statement, defendant then placed the pistol under his mattress, intending to return it later. The inquiry was made in the instant trial for purposes of impeaching defendant, who had earlier testified that he had *never* taken a gun for safekeeping and placed it under his bed. Although introduction of the 1982 statement was allowed in the

trial, the district court, in its written opinion, expressly determined that it was irrelevant and inadmissible. Because of the statement's remoteness in time, the court concluded that its probative value, if any, was substantially outweighed by its prejudicial effect. The court stated that the 1982 statement did not influence its decision in any manner.

Defendant maintains it was error for the court to have admitted the statement in the first place. The error cannot be deemed harmless, defendant contends, because it would have been impossible for the trial court not to have considered the statement in reaching its verdict on the firearm possession charge.

▪ The governing rule is succinctly stated in *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir.1972):

> It is well settled that in a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice. The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the court considered only properly admitted and relevant evidence in rendering its decision.

*See also, Rogers v. McMackin*, 884 F.2d 252, 256 (6th Cir.1989). This "presumption of regularity" does not apply where it is plain from the district court's findings that the court relied on the inadmissible evidence. *United States v. Joseph*, 781 F.2d 549, 553 (6th Cir.1986). Yet, even if it appears the court did in some measure rely on the inadmissible evidence, its admission is nonetheless deemed harmless if there is relevant and competent evidence to establish the defendant's guilt in the absence of the objectionable proof. *Id.*

Here, the admissibility of the 1982 statement is not at issue. The trial court ultimately held it was not admissible. In order to make this determination, the trial court obviously had to at least review the contents of the statement. Assuming, however, that the statement should not have been admitted for any purpose in the first place, the threshold question is whether there is any reason to believe the trial court relied on the statement in any way. Defendant's argument that the trial court did rely on the statement is not supported by any "affirmative showing," but is based on rank speculation.

Rebutting this speculation are three concrete reasons to conclude the 1982 statement played no role in the trial court's finding of guilt. First, the trial court expressly held that the statement was irrelevant and not admissible. Second, the trial court expressly disavowed any reliance on it. Third, the trial court explained its finding of defendant's guilt with reference exclusively to other competent proof. Furthermore, considering the above analysis of the sufficiency of the evidence, it is clear that, *even if* the 1982 statement played any hypothetical subconscious role in the trial court's analysis, it was harmless, because defendant's guilt was sufficiently established by other relevant and competent evidence. Accordingly, defendant's claim of error is denied as groundless.

### C. Obstruction of Justice Enhancement

At sentencing, the trial court enhanced defendant's offense level by 2 levels pursuant to U.S.S.G. § 3C1.1 based on its finding that defendant had obstructed the administration of justice by testifying falsely. Specifically, the court found "by clear and convincing evidence that the defendant testified falsely to a material fact, willfully in order to obstruct justice, because he testified that he did not know that the firearm was hidden under the mattress in

order to avoid conviction." Defendant contends the trial court misapplied the enhancement in that he failed to evaluate his testimony in the light most favorable to him.

The sentencing court's factual findings in applying the Sentencing Guidelines are reviewed only for clear error. *Spears,* 49 F.3d at 1142. Under U.S.S.G. § 3C1.1, the sentencing court is obligated to increase the defendant's offense level by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense." Committing perjury is within the scope of conduct requiring the sentence enhancement. *United States v. Sassanelli,* 118 F.3d 495, 500 (6th Cir.1997). Enhancement should be limited to those cases in which the defendant intentionally lied on the stand, and is not warranted in the case of false testimony due to mistake or confusion. *Id.* Accordingly, the sentencing court is required to identify portions of the defendant's testimony that it finds to be perjurious and make specific findings as to the factual predicates for a finding of perjury. *Id.* at 501. "Allegedly false statements should be evaluated in the light most favorable to the defendant." *Spears,* 49 F.3d at 1143. "However, this does not require the sentencing court to disregard all evidence that is unfavorable to the defendant." *Id.*

Here, the sentencing judge was also the trier of fact at trial. The finding of defendant's guilt was predicated on the court's finding that defendant's testimony was not credible. The trial court amply spelled out the factual predicates for its finding that defendant perjured himself both in its 14–page opinion explaining the verdict and in the five-page order explaining the obstruction of justice enhancement.

Given that the district court assessed defendant's credibility during trial and rejected defendant's account as a deliberate falsehood, enhancement under § 3C1.1 was practically mandated. The present record provides no basis for finding the district court clearly erred in applying the enhancement.

### IV

For the foregoing reasons, all of defendant's claims of error are denied and the judgment of the district court is AFFIRMED in all respects.